UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RONALD LINHARES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Action No. 15-11881-LTS |
| BUYERS PRODUCTS COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION TO EXCLUDE AND FOR SUMMARY JUDGMENT

September 2, 2016

SOROKIN, J.

Defendant Buyers Products Company ("BPC") has moved to exclude the opinions of John Orlowski ("Orlowski"), the expert retained by plaintiff Ronald Linhares ("Linhares"), pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993). BPC also seeks summary judgment. Doc. No. 39. The Court DENIES the motion.

I. BACKGROUND

In January 2013, Linhares was operating a self-contained stainless steel hopper spreader ("salt spreader") to spread salt on the grounds of Charlton Memorial Hospital. Doc. No. 45 ¶ 1. At the conclusion of his work, he climbed on top of the screen covering the salt spreader mechanism and stamped on accumulated salt clumps with his boot-shod feet, in an effort to force the salt through the salt spreader's screen. Id. ¶ 2. Linhares asserts that his foot fell into an opening in the salt spreader's screen, causing him to fall and injure himself. Id. ¶¶ 2, 44, 47, 51. He filed the instant action in April 2015 against BPC, the salt spreader's manufacturer, alleging defective design. Doc. No. 1. Linhares retained Orlowski to assess the salt spreader's design. Doc. No. 34.

The salt spreader sits in the bed of a pickup truck. Doc. No. 45 ¶ 4. The hopper of the salt spreader is covered by a screen intended to prevent large chunks of ice or salt from entering into the machine. Id. ¶ 5. The salt spreader's screen contains an opening of approximately 7 1/2 inches by 12 inches which is bisected by a beam, which itself has an opening to accommodate a hook, strap or other lifting apparatus used to install or remove the salt spreader from the pickup truck. Id. ¶ 7-11.

In his report, Orlowski opined that the salt spreader "was defective and unreasonably dangerous in that the hopper screen contained a large open area into which one could step" and that "[t]he defective and unreasonably dangerous condition of the [salt spreader] . . . was a substantial contributing cause of Ronald Linhares [sic] injuries." Doc. No. 34-1 at 6. Orlowski further stated that "it would have been safe and prudent to affix the hopper screen opening with a hinged cover to enclose the opening when the unit was not being lifted." Id. at 5.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). However, "conclusory allegations, improbable inferences, and unsupported speculation" will not suffice.

Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Summary judgment will enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

II. DISCUSSION

A.  Exclusion of Orlowski

BPC argues that Orlowski is not qualified to offer opinions on the design of the salt spreader, that his opinions are not based on sufficient facts or data, and that he did not reliably apply his methodology to the facts.  Doc. No. 40.  The Court rejects each of these arguments.

The proponent of expert testimony bears the burden of demonstrating that the evidence satisfies Fed. R. Evid. 702 by a preponderance of the evidence, as interpreted by Daubert and its progeny.  McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 422 (D. Mass. 2008). An expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." Daubert, 509 U.S. at 597.  "The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue."  Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002) (quoting Cipollone v. Yale Indus. Prod., Inc., 202 F.3d 376, 380 (1st Cir. 2000)).

Rule 702 requires Linhares to show that (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  First, the Court determines if the expert's data "provides adequate support to mark the expert's testimony as reliable."  Carlucci v. CNH America LLC, No. 10-12205-DPW, 2012 WL 4094347, at * 3 (D.

Mass. Sep. 14, 2012). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). Second, to assess the reliability of the expert's principles and methods, the Court examines the reasonableness of the expert's approach and "the method of analyzing the data thereby obtained." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153-54 (1999). The proffered expert must "impart[] scientific knowledge rather than guesswork." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998). Third, the proponent must demonstrate that the expert exercised the "intellectual rigor" of an expert in the relevant field in applying his methodology to the facts at hand. Kumho Tire, 526 U.S. at 152.

BPC first challenges Orlowski's qualifications as an expert. Doc. No. 40 at 6-10. It argues that Orlowski lacks knowledge, skill, experience, training and education regarding salt spreaders, their screens, and the means of lifting them. Id. at 7. BPC relies on Carlucci and Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169 (1st Cir. 1992), to support its argument. Id. at 8-9.

In Carlucci, the plaintiff was injured when a skid-steer loader operated by another worker backed up and ran over his foot. 2012 WL 4094347, at *1. The Court excluded the plaintiff's expert, who had offered an opinion that mirrors, a rear-view camera or audible alarm could have prevented the accident, as unqualified "by training, experience, or specialized knowledge to give an expert opinion about the design of the skid-steer loader." Id. at * 4. The Court reasoned that the expert's civil (rather than mechanical) engineering background lacked experience with skid-steer loaders. Id. at * 4-5. The expert had only operated a skid-steer loader two or three times, written only one report on a skid-steer loader, and had not participated in the design of a skid-steer

4

loader. Id.  The Carlucci court relied upon Tokio Marine, noting that the First Circuit stated in that case that an expert need not possess "'specific educational training in the area of expertise'" and "'need not have design experience with the particular product in order to render expert opinion about the unreasonableness of the its design,'" but the Court nonetheless held that "where an expert lacks relevant experience, training, and education to testify about design defects, his testimony is inadmissible." Id. at * 4 (quoting Tokio Marine, 958 F.2d at 1174).

In Tokio Marine, the plaintiff's expert offered an opinion concerning cranes and crane accident investigations and safety.  958 F.2d at 1173.  The case stemmed from an accident in which a crane tipped over, damaging the giant video screen its operator was hoisting at the time.  Id. at 1170.  The plaintiff asserted that the crane suffered from a design defect, namely, the absence of a warning device called a load moment indicator.  Id. at 1173.  The First Circuit upheld the trial court's exclusion of the expert's opinions because the expert lacked the requisite education and experience.  Id. at 1173-74.  The expert was a civil engineer, not a mechanical engineer, and he had not inspected the crane at issue.  Id. at 1174.  "[The expert] had never operated nor performed maintenance on a crane.  He had never designed cranes nor worked for a crane manufacturer.  There was no evidence of publication or in-depth study on the subject of cranes.  He conceded that he was not an expert in crane maintenance nor in crane operation.  He also conceded that he was not an expert on load moment indicators, although he said he had 'knowledge about it.'" Id.  The Court further observed that the expert's "'hired gun' background as an instant expert in an astonishing number of [unrelated] other areas suggested he would not possess the professional safeguards ensuring objectivity." Id. at 1175 (internal quotation marks omitted).

Although Orlowski lacks experience with salt spreaders, the relevant consideration here is the screen that sits on top of the salt spreader.  The design and operation of the salt spreader

5

machinery is not at issue in this case. Rather, the plaintiff contends that the opening in the screen over the salt spreading mechanism created an unreasonably dangerous condition. In both Carlucci and Tokio Marine, experience with the relevant machinery – the skid-steer loader and the crane – was essential to aiding the jury in their factual determinations. Here, Orlowski's qualifications are sufficient for him to proffer a helpful opinion regarding the safety of the screen over the salt spreader apparatus. Orlowski has significant experience in the areas of machinery safety and "safeguarding devices to prevent operator injury." Doc. No. 34-1 at 4. He has authored, among other publications, an article entitled "Engineering Aspects of Guarding of Machinery and Equipment." Id. at 13. He cites "machinery safeguarding and fall protection" among his coursework. Id. The Court finds that Orlowski is qualified to make the proffered opinions.

BPC next argues that Orlowski's opinions are not based on sufficient facts or data. Doc. No. 40 at 10-14. BPC maintains that there is no evidence that any person other than Linhares has climbed on top of the spreader screen and tripped on the opening in it. Id. at 10. BPC also contends that Linhares was responsible for the accident because he sprayed cold water on the salt spreader prior to his accident, and he was moving backwards as he stamped. Id. at 11. Thus, Orlowski's "'data set' is limited to a single tripping incident that resulted directly from Plaintiff's own choices and actions." Id. at 11. BPC argues Orlowski also should have supported his conclusions by researching salt spreader machines and the industry, in particular the lifting mechanisms employed by other manufacturers of salt spreaders. Id. at 11-12.

Again, BPC construes the central focus of Orlowski's opinions too broadly. There need not be numerous instances of accidents like Linhares's in order for an expert to offer an opinion as to whether the opening in the screen on top of the salt spreader was a design defect. Similarly, it is unclear how extensive research into the lifting mechanisms of other salt spreaders would have

6

rendered Orlowski's opinion more grounded in facts and data. In any case, Orlowski testified that he did not perform extensive research into the lifting mechanisms of other salt spreaders, just enough to demonstrate that methods other than that used by BPC are available, and that his research did not "have much to do with [his] opinions." Doc. No. 40-1 at 6. Orlowski states that, instead, he based his opinions on, *inter alia*, an inspection of the salt spreader at issue, the owner's manual, the installation manual, assembly drawings, and various discovery materials in this case. Doc. No. 34-1 at 3. These materials constitute sufficient data and facts from which Orlowski could render an opinion regarding the reasonableness of BPC's design.

BPC next argues that Orlowski did not reliably apply his methodology to the facts of this case. Doc. No. 40 at 14-17. BPC contends that Orlowski should have attempted to "understand BPC's lifting strategy" and "put the strategy into the context of the larger material aggregate spreader industry." Id. at 14-15. BPC also disputes the cause of the accident and argues that Orlowski failed to perform an independent investigation of the cause of the accident. Id. at 15, 16.

It is unclear to the Court how Orlowski failed to understand the relative simplicity of the lifting mechanism employed by BPC's salt spreader or what assessment of the "larger material aggregate spreader industry" was required. Orlowski testified that he "gather[ed] as much information as to the design of the product, the cause of the accident, [and] the interaction between the individual that was injured and the product." Doc. No. 40-1 at 4. He also "conducted a machine inspection" and "relied on many of the standards and publications that I have reviewed over the years." Id. To the extent that BPC disputes the cause of the accident and the reasonableness of Linhares's method of clearing salt chunks from the screen, those are questions best explored at trial and determined by a jury, not bases to eliminate an expert opinion. "Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's

assessment of the situation is correct. As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process." Ruiz-Troche, 161 F.3d at 85 (internal quotation marks and citation omitted). BPC's motion to exclude is denied.

B. Alternative Design

BPC argues that Linhares has failed to produce sufficient evidence of a feasible alternative design, and thus BPC is entitled to summary judgment.[1] Doc. No. 40 at 17-18. Orlowski stated that "it would have been safe and prudent to affix the hopper screen opening with a hinged cover to enclose the opening when the unit was not being lifted" and that "[w]e can conceive of no reason why a competent machine designer could not design a hinged cover that was flush with the screen." Doc. No. 34-1 at 5. BPC argues that this statement does not constitute a sufficiently detailed analysis of the proposed alternative design. Doc. No. 40 at 18. Linhares asserts that Orlowski will produce such a cover for trial. Doc. No. 43 at 12.

The Court concludes that Orlowski's statements, in this context, are sufficient to survive a motion for summary judgment. Construing Orlowski's statement in the light most favorable to Linhares, there is no indication that "the interference with the cost or performance of the product is so substantial that no reasonable jury could conclude that it offers a reasonable alternative." Evans v. Lorillard Tobacco Co., 465 Mass. 411, 433 (2013). There is no "binding precedent that suggests alternative design testing is mandated in Massachusetts design defect cases, [but] it does assist the expert in determining the costs and benefits of the alternative design, its efficacy, its compatibility, and other factors which play into the feasibility analysis." Carlucci, 2012 WL

---

[1] The Court applies the familiar summary judgment standard requiring BPC to demonstrate that there is no issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to Linhares and draws all reasonable inferences in his favor. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

4094347, at * 6. On this record, the feasibility of Orlowski's alternative design is for the jury to evaluate.

Linhares's intention to produce the hinged cover for trial presents a discovery question. Fact discovery closed on January 9, 2016 and expert reports were filed with this Court in February 2016. Doc. Nos. 27, 33-35. Any additional expert discovery between now and trial amounts to an addition to Orlowski's expert opinion, and the time has passed for Orlowski to augment his expert opinion. Linhares's proof with respect to alternative design must rely on the record evidence as it stands.

### C. Failure to Warn

Finally, BPC argues that it is entitled to summary judgment on Linhares's failure to warn claim because any danger was obvious, and thus no duty to warn existed. Bavuso v. Caterpillar Indus., Inc., 408 Mass. 694, 699 (1990) (noting no duty to warn exists where danger is obvious). Whether the danger was obvious presents a question of fact or inference from the facts not susceptible to resolution in this case on summary judgment. It bears noting that an expert cannot submit a draft warning not already disclosed in his report. The Court denies summary judgment on the failure to warn claim.

### IV. CONCLUSION

The Court DENIES BPC's motion to exclude Plaintiff's proposed expert and motion for summary judgment, Doc. No. 39. Within fourteen days from entry of this Order, the parties shall file a status report stating the anticipated duration of trial, whether the parties consent to the exercise of jurisdiction of the magistrate judge (the parties shall not report individual positions and no adverse substance consequence will result from declining to consent), whether the parties

9

request an opportunity to mediate with the Court's mediation program and, if not amenable to mediation, when the parties will be ready for trial.

                                                                  SO ORDERED.

                                                 /s/ Leo T. Sorokin
                                                 Leo T. Sorokin
                                                 United States District Judge